**FILED**

**DECEMBER 13, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

3549 MDS/TBU

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**07 C 7000**

| | |
|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) **JUDGE LEFKOW** |
| | ) **MAGISTRATE JUDGE ASHMAN** |
| SHO-DEEN, INC., SHO-DEEN CONSTRUCTION COMPANY, LLC, UNITED STATES OF AMERICA, and the UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff COUNTRY MUTUAL INSURANCE COMPANY ("COUNTRY MUTUAL") by and through its attorneys, PURCELL & WARDROPE, CHTD., and as its Complaint for Declaratory Judgment against Defendants SHO-DEEN, INC. and SHO-DEEN CONSTRUCTION COMPANY, LLC states as follows:

### General

1.  This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 for judgment that Plaintiff COUNTRY MUTUAL owes no duty to defend or indemnify Defendants SHO-DEEN, INC. and SHO-DEEN CONSTRUCTION COMPANY, LLC with respect to a lawsuit filed by the UNITED STATES OF AMERICA.

1

**Parties**

2.   COUNTRY MUTUAL is an Illinois - domiciled insurance company licensed to write policies of insurance in the State of Illinois and was so licensed at all times relevant herein.

3.   SHO-DEEN, INC. ("SHO-DEEN") is incorporated in the state of Illinois and has its principal place of business located at 17 North First Street, Geneva, Illinois, 60134, which is within the Northern District of Illinois.

4.   SHO-DEEN    CONSTRUCTION    COMPANY,    LLC,    ("SHO-DEEN CONSTRUCTION") upon information and belief is a limited-liability company organized pursuant to the laws of the State of Illinois with its principal place of business located at 17 North First Street, Geneva, Illinois, 60134, which is within the Northern District of Illinois.

5.   THE UNITED STATES ARMY CORPS OF ENGINEERS ("ARMY CORPS") is an agency of the United States of America.  The ARMY CORPS administers a permit system established by Congress relating to  the discharge of pollutants into the navigable waters of the United States.    The ARMY CORPS is joined as a defendant herein solely to be bound in the judgment rendered in this cause. COUNTRY MUTUAL seeks no specific or affirmative relief against the ARMY CORPS and in the event the ARMY CORPS agrees and stipulates in writing to be bound by the Court's judgment COUNTRY MUTUAL will dismiss it from this action.

6.   The UNITED STATES OF AMERICA ("UNITED STATES") filed the lawsuit against SHO-DEEN and SHOE-DEEN CONSTRUCTION as described more

fully herein. The UNITED STATES is joined as a defendant herein solely to be bound in the judgment rendered in this cause. COUNTRY MUTUAL seeks no specific or affirmative relief against the UNITED STATES and in the event the UNITED STATES agrees and stipulates in writing to be bound by the Court's judgment COUNTRY MUTUAL will dismiss it from this action.

### Jurisdiction and Venue

7.    Jurisdiction is proper Jurisdiction is proper pursuant to 28 U.S.C. §1346 and 28 U.S.C. §1355 because the UNITED STATES and the ARMY CORPS are defendants herein to be bound to the judgment as they have a claim against SHO-DEEN and SHO-DEEN CONSTRUCTION for alleged fines and/or penalties.

8.    Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because the named insured on the insurance policies at issue is a resident of this District, the insurance policies at issue were delivered to the named insured in this District, the lawsuit filed by the UNITED STATES at issue herein was filed in this District, and the matters that were the subject of said lawsuit occurred in this District.

### Underlying Lawsuit

9.    The UNITED STATES filed a lawsuit in the United States District Court for the Northern District of Illinois entitled *United States of America v. Sho-Deen, Inc. and Sho-Deen Construction Company, LLC* bearing cause number 07 C 2900 ("Underlying Lawsuit"). A copy of the complaint in the Underlying Lawsuit is attached hereto as Exhibit A.

10.    The Underlying Lawsuit is a civil action filed by the UNITED STATES for injunctive relief and for civil penalties pursuant to the Clean Water Act 33 U.S.C.

§§1311, 1319(b) and 1344 wherein the UNITED STATES alleges SHO-DEEN and/or SHO-DEEN CONSTRUCTION violated provisions of the Clean Water Act and related regulations.

11.    The Underlying Lawsuit alleges SHO-DEEN and/or SHO-DEEN CONSTRUCTION owned, leased, or otherwise controlled certain property located in the State of Illinois and within the Northern District of Illinois in unincorporated Geneva, Kane County, Illinois. The property allegedly is located at or near Mill Creek, a tributary of the Fox River which allegedly is a navigable – in – fact water of the United States and contains wetlands adjacent to Mill Creek and/or tributaries to Mill Creek.

12.    The UNITED STATES alleges that on or about September 23, 2004, and dates thereafter, the ARMY CORPS inspected the aforementioned property and found that SHO-DEEN and SHO-DEEN CONSTRUCTION had deposited, or caused to be deposited, dredged and/or fill material into Mill Creek and/or into or on the wetlands adjacent to Mill Creek on said property.

13.    The UNITED STATES further alleges that the dredged and/or fill material was discharged in connection with a bridge construction project known as Dobson Lane Bridge.

14.    In the Underlying Lawsuit, SHO-DEEN and/or SHO-DEEN CONSTRUCTION admits that prior to September 23, 2004, materials, including bridge footings, were placed in the area immediately adjacent to Mill Creek in the vicinity of Dobson Lane.

4

15.    The Underlying Lawsuit further alleges that Mill Creek and the wetlands adjacent to Mill Creek are navigable waters of the United States under the Clean Water Act and that the dredged and/or fill material are pollutants under the Clean Water Act. The Underlying Lawsuit alleges the aforementioned pollutants were discharged into Mill Creek or the adjacent wetland and that SHO-DEEN and SHO-DEEN CONSTRUCTION did not obtain a permit from the ARMY CORPS to discharge those pollutants, and that those pollutants caused injury to the navigable waters of the United States.

16.    The UNITED STATES in the Underlying Lawsuit is seeking a judgment against SHO-DEEN and SHO-DEEN CONSTRUCTION requiring them to restore the wetlands and creek at Mill Creek, enjoining SHO-DEEN and SHO-DEEN CONSTRUCTION from discharging any pollutants, and requiring to pay a civil penalty not to exceed thirty two thousand, five hundred dollars ($32,500.00) per day.

**Defendants' Negotiations Prior to Underlying Lawsuit**

17.    Construction on the Dobson Lane Bridge project in or about September of 2004. The ARMY CORPS visited said project on September 23, 2004 and observed the construction in progress.

18.    On January 6, 2005 the ARMY CORPS issued a Cease and Desist Order to SHO-DEEN and/or SHO - DEEN CONSTRUCTION with regard to the Dobson Lane Bridge project for alleged violations of the Clean Water Act.

19.    Subsequent to January 6, 2005, the ARMY CORPS and SHO-DEEN and/or SHO-DEEN CONSTRUCTION engaged in negotiations to settle the alleged violations

5

of the Clean Water Act relating to the Dobson Lane Bridge project and/or that are the subject of the Underlying Lawsuit. Said negotiations included demands by the ARMY CORP that SHO-DEEN and/or SHO-DEEN CONSTRUCTION pay money for the alleged violations of the Clean Water Act.  Also, in said negotiations SHO-DEEN and/or SHO-DEEN CONSTRUCTION offered to pay money for the alleged violations of the Clean Water Act.

### Notice to Country Mutual

20.    SHO-DEEN and/or SHO-DEEN CONSTRUCTION tendered the Underlying Lawsuit to COUNTRY MUTUAL on August 23, 2007.  The August 23, 2007 tender was the first notice to COUNTRY MUTUAL of the Underlying Lawsuit.

21.    The August 23, 2007 tender was the first notice by SHO-DEEN and/or SHO-DEEN CONSTRUCTION to COUNTRY MUTUAL of the allegations against SHO-DEEN and/or SHO-DEEN CONSTRUCTION by the ARMY CORPS with regard to Mill Creek the Dobson Lane Bridge project.

### Country Mutual Policy

22.    COUNTRY MUTUAL issued an insurance policy to SHO – DEEN bearing number AB2084990 which had a policy period of March 31, 2004 through March 31, 2005 (hereinafter "Country Mutual Policy"). A copy of the Country Mutual policy is attached hereto as Exhibit B.

23.    The Country Mutual Policy contains the following terms and conditions:

### AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

6

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **1. Insuring Agreement** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

## 1. Insuring Agreement

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage"…

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"'

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by You to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such   "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*          *          *

## 2. Exclusions

This insurance does not apply to:

## a. Expected Or Intended Injury

"Bodily injury" or "property damage: expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**f. Pollution**

**(1)**   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    **(a)**   At or from any premises site or location which is or was at any time occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

        **(i)**   "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

        **(ii)**   "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than additional insured; or

        **(iii)**   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    **(b)**   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)**   Which are or were at any time transported , handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(d)**   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or directly on any insured's behalf are performing operations if the "pollutants'" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor, However, this subparagraph does not apply to:

        **(i)**   "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from

a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the' fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii)     "Bodily injury" or "property damage" sustained within a building and caused by the release of cases, fumes or vapors from materials brought into that building in connection with operations being performed by your or on behalf by a contractor or subcontractor; or

(iii)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e)     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(2)     Any loss, cost or expense arising out of any:

(a)     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b)     Claim or suit by or on behalf of governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**m.     Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*        *        *

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILIY

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we sill have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

**2. Exclusions**

This insurance does not apply to:

**a.**    "Personal and advertising injury":

**(1)**    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"; ...

**(4)**    Arising out of a criminal act committed by or at the direction of any insured;...

**(10)**    Arising out of actual, alleged or threatened discharge, dispersal, secpage, migration, release or escape of "pollutants" at any time.

**b.**    Any loss, cost or expense arising out of any:

**(1)**   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)**   Claim or suit by or on behalf of a governmental authority for damages because of testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the affects of, "pollutants".

*       *       *

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.**   **Duties In The Event of Occurrence, Offense, Claim or Suit**

**a.**   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

**(1)**   How, when and where the "occurrence" or offense took place;

**(2)**   the names and addresses of any injured persons and witnesses; and

**(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense

**b.**   If a claim is made or "suit" is brought against any insured, you must:

**(1)**   Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**   Notify us as soon as practicable

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**   You and any other involved insured must:

**(1)**   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)**   Authorize us to obtain records and other information;

**(3)**   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## SECTION V – DEFINITIONS

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**    Your fulfilling the terms of the contract or agreement.

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of the private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication of material that violates a person's right of privacy.

    **f.**    The use of another's advertising idea in your "advertisement"; or

g. Infringing on upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which he insured submits with our consent.

*     *     *

## POLLUTION AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORMS
BUILDING AND PERSONAL PROPERTY COVERAGE FORM

### A.    Liability Pollution Exclusion Revision(s)

The following revisions apply to the Commercial General Liability Coverage forms:

1. Under **SECTION 1 - COVERAGE, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, item **2. Exclusions**, item **f. Pollution**: paragraphs **1(d)** and **1(e)** are replaced by:

**(d)**     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing, or have completed, operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this paragraph does not apply to:

(i)     "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

(ii)     "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii)     "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)**     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing, or have completed, operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2.     Under **SECTION V· DEFINITIONS**, item **15**. "Pollutants" is replaced by:

**(15)**     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. For the purposes of this exclusion, lead of any kind, in whatever form and however used, is considered a pollutant. This description of lead as a pollutant is by way of clarifying example

14

only and is not to be construed in any way limiting the scope of breadth of this exclusion.

**B. Property Pollution Exclusion Revision(s)**

The following is added under **B.** EXCLUSIONS AND LIMITATIONS in the Building and Personal Property Coverage Form:

This policy does not cover expenses incurred or loss of use resulting from governmental direction or request to remove or otherwise modify materials present at the insured premises which contain substances deemed hazardous to society. Further, coverage does not apply to fines or penalties assessed due to the existence of, or failure to remove such substances.

This policy does not cover damage, loss of use, or expense caused directly or indirectly by radon gas, radium or any other radioactive substances.

24. The Country Mutual Policy was renewed on subsequent years. Said renewal policies have policy periods of March 31, 2005 through March 31, 2006, March 31, 2006 through March 31, 2007, and March 31, 2007 through March 31, 2008 (hereinafter "Country Mutual Renewal Policies"). The Country Mutual Renewal Policies contain policy language substantially similar to the Country Mutual Policy.

**COUNT I**

1 – 24. COUNTRY MUTUAL realleges Paragraphs 1 – 24 aforesaid as Paragraphs 1 – 24 of Count I as if fully stated herein.

25. The Underlying Lawsuit is not covered under the Country Mutual Policy and Country Mutual Renewal Policies because the Underlying Lawsuit does not seek recovery for bodily injury or property damage caused by an occurrence as those terms are defined in the Country Mutual Policy and Country Mutual Renewal Policies.

26.    The Underlying Lawsuit is not covered under the Country Mutual Policy and Country Mutual Renewal Policies because the Underlying Lawsuit does not seek recovery for damages because of "personal and advertising injury" as those terms are defined in the Country Mutual Policy and Country Mutual Renewal Policies.

27.    Consequently, COUNTRY MUTUAL has no duty to provide insurance coverage to SHO-DEEN and SHO-DEEN CONTRUCTION with respect to the Underlying Lawsuit.

28.    There is an actual and justicable controversy between the parties which may be determined by a judgment order of this Court. Pursuant to the terms of 28 U.S.C. §2201, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce same.

WHEREFORE, the Plaintiff, COUNTRY MUTUAL INSURANCE COMPANY requests this Court to find and declare as follows:

1.    The Country Mutual Policy does not provide insurance coverage for the Underlying Lawsuit;

2    COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN with respect to the Underlying Lawsuit;

3.    COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit.

4.    Granting COUNTRY MUTUAL all other further relief this Court deems proper.

16

## COUNT II

1 – 24. Pleading in the alternative and without prejudice to other allegations, COUNTRY MUTUAL realleges Paragraphs 1 – 24 aforesaid as Paragraphs 1 –24 of Count II as if fully stated herein.

25.  The Underlying Lawsuit is excluded from coverage by Exclusion A (expected or intended) found within Coverage Part A of the Country Mutual Policy and/or Country Mutual Renewal Policies.

26.  Alternatively, the Underlying Lawsuit is excluded from coverage by Exclusion F (pollution) found within Coverage Part A of the Country Mutual Policy and/or Country Mutual Renewal Policies.

27.  Alternatively, the Underlying Lawsuit is excluded from coverage by Exclusion M (impaired property) found within Coverage Part A of the Country Mutual Policy and/or Country Mutual Renewal Policies.

28.  Alternatively, the Underlying Lawsuit is excluded from coverage by Exclusion A(1) found within Coverage Part B of the Country Mutual Policy and/or Country Mutual Renewal Policies.

29.  Alternatively, the Underlying Lawsuit is excluded from coverage by Exclusion A(4) found within Coverage Part B of the Country Mutual Policy and/or Country Mutual Renewal Policies.

30.  Alternatively, the Underlying Lawsuit is excluded from coverage by A(10) found within Coverage Part B of the Country Mutual Policy and/or Country Mutual Renewal Policies.

31.    Alternatively, the Underlying Lawsuit is excluded from coverage by Exclusion b(1) and/or b(2) found within Coverage Part B of the Country Mutual Policy and/or Country Mutual Renewal Policies.

32.    Alternatively, the Underlying Lawsuit is excluded from coverage by the Pollution Amendatory Endorsement of the Country Mutual Policy and/or Country Mutual Renewal Policies.

33.    No exceptions apply to prevent the application of the aforementioned exclusions.

34.    Consequently, COUNTRY MUTUAL has no duty to provide insurance coverage to SHO-DEEN and SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit.

35.    There is an actual and justicable controversy between the parties which may be determined by a judgment order of this Court. Pursuant to the terms of 28 U.S.C. §2201, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce same.

WHEREFORE, the Plaintiff, COUNTRY MUTUAL INSURANCE COMPANY, pleading in the alternative and without prejudice to its other allegations, requests this Court to find and declare as follows:

1.    The Underlying Lawsuit is excluded from coverage under Country Mutual Policy and Country Mutual Renewal Policies;

2    COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN with respect to the Underlying Lawsuit;

3.    COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit.

4.      Granting COUNTRY MUTUAL all other further relief this Court deems proper.

## COUNT III

1 – 24. Pleading in the alternative and without prejudice to other allegations, COUNTRY MUTUAL realleges Paragraphs 1 – 24 aforesaid as Paragraphs 1 –24 of Count III as if fully stated herein.

25.     SHO-DEEN and SHO-DEEN CONSTRUCTION violated the terms and conditions of the Country Mutual Policy and the Country Mutual Renewal Policies by failing to give COUNTRY MUTUAL timely notice of the allegations received from the ARMY CORPS on or about January 6, 2005.

26.     Alternatively, SHO-DEEN and SHO-DEEN CONSTRUCTION violated the terms and conditions of the Country Mutual Policy and the Country Mutual Renewal Policies by failing to give COUNTRY MUTUAL timely notice of the Underlying Lawsuit.

27.     Consequently, COUNTRY MUTUAL has no duty to provide insurance coverage to SHO-DEEN and SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit.

28.     There is an actual and justicable controversy between the parties which may be determined by a judgment order of this Court. Pursuant to the terms of 28 U.S.C. §2201, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce same.

WHEREFORE, the Plaintiff, COUNTRY MUTUAL INSURANCE COMPANY, pleading in the alternative and without prejudice to its other allegations, requests this Court to find and declare as follows:

1.    SHO – DEEN and/or SHO-DEEN CONSTRUCTION breached the terms and conditions of the Country Mutual Policy and/or Country Mutual Renewal Policies;

2.    COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN with respect to the Underlying Lawsuit;

3.    COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit;

4.    Granting COUNTRY MUTUAL all other further relief this Court deems proper.

### COUNT IV

1 – 24. Pleading in the alternative and without prejudice to other allegations, COUNTRY MUTUAL realleges Paragraphs 1 – 24 aforesaid as Paragraphs 1 –24 of Count IV as if fully stated herein.

25.    The ARMY CORPS issued a cease and desist order to SHO-DEEN and SHO-DEEN CONSTRUCTION on or about January 6, 2005 with regard to the Dobson Lane Bridge project for alleged violations of the Clean Water Act.

26.    COUNTRY MUTUAL is not obligated to provide coverage for SHO-DEEN and/or SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit under the Country Mutual Renewal Polices pursuant to the doctrines of "known loss" and/or "loss in progress" because SHO-DEEN and/or SHO-DEEN CONSTRUCTION knew or had reason to know that there was a substantial probability that either the ARMY CORPS and/or the UNITED STATES would

make a claim with regard to the Dobson Lane Bridge project for alleged violations of the Clean Water Act.

27.  Alternatively, COUNTRY MUTUAL is not obligated to provide coverage for SHO-DEEN and/or SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit under the Country Mutual Renewal Polices pursuant to paragraph (b)(3) of the Insurance Agreement of Coverage Part A, as amended, because SHO-DEEN and/or SHO-DEEN CONSTRUCTION knew or had reason to know that there was a substantial probability that either the ARMY CORPS and/or the UNITED STATES would make a claim with regard to the Dobson Lane Bridge project for alleged violations of the Clean Water Act.

28.  Consequently, COUNTRY MUTUAL has no duty to provide insurance coverage to SHO-DEEN and SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit.

29.  There is an actual and justicable controversy between the parties which may be determined by a judgment order of this Court. Pursuant to the terms of 28 U.S.C. §2201, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce same.

WHEREFORE, the Plaintiff, COUNTRY MUTUAL INSURANCE COMPANY, pleading in the alternative and without prejudice to its other allegations, requests this Court to find and declare as follows:

1.  There is no coverage under the Country Mutual Renewal Policies;

2.     COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN with respect to the Underlying Lawsuit;

3.     COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit;

4.     Granting COUNTRY MUTUAL all other further relief this Court deems proper.

## COUNT V

1 – 24. Pleading in the alternative and without prejudice to other allegations, COUNTRY MUTUAL realleges Paragraphs 1 – 24 aforesaid as Paragraphs 1 –24 of Count V as if fully stated herein.

25.    SHO-DEEN CONSTRUCTION does not qualify as an insured under the Country Mutual Policy and/or Country Mutual Renewal Polices.

26.    Consequently, COUNTRY MUTUAL has no duty to provide insurance coverage to SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit.

27.    There is an actual and justicable controversy between the parties which may be determined by a judgment order of this Court. Pursuant to the terms of 28 U.S.C. §2201, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce same.

WHEREFORE, the Plaintiff, COUNTRY MUTUAL INSURANCE COMPANY, pleading in the alternative and without prejudice to its other allegations, requests this Court to find and declare as follows:

1.     SHO-DEEN CONSTRUCTION is not an insured under the Country Mutual Policy and/or the Country Mutual Renewal Policies;

2      COUNTRY MUTUAL is not obligated to defend or indemnify SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit;

3.     Granting COUNTRY MUTUAL all other further relief this Court deems proper.

## COUNT VI

1 – 24  Pleading in the alternative and without prejudice to other allegations, COUNRY Mutual realleges Paragraphs 1 – 24 aforesaid as Paragraphs 1 – 24 of Count VI as if fully stated herein.

25.    The Country Mutual Policy and/or the Country Mutual Renewal Policies do not provide coverage for the injunctive relief requested by each count of the complaint in the Underlying Lawsuit because injunctive relief does not seek recovery for monetary damages as required by the Country Mutual Policy and/or the Country Mutual Renewal Policies.

26.    Consequently, Country Mutual is not obligated to provide insurance coverage for any injunctive relief ordered against SHO-DEEN and SHO-DEEN CONSTRUCTION with respect to the Underlying Lawsuit.

27.    There is an actual and justicable controversy between the parties which may be determined by a judgment order of this Court. Pursuant to the terms of 28 U.S.C. §2201, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce same.

WHEREFORE, the Plaintiff, COUNTRY MUTUAL INSURANCE COMPANY, pleading in the alternative and without prejudice to its other allegations, requests this Court to find and declare as follows:

1.  There is no coverage under the Country Mutual Policy or Country Mutual Renewal Policies for the injunctive relief requested by the Underlying Lawsuit;

2   COUNTRY MUTUAL is not obligated to provide insurance coverage for any injunctive relief ordered against SHO – DEEN with respect to the Underlying Lawsuit;

3,  COUNTRY MUTUAL is not obligated to provide insurance coverage for any injunctive relief ordered against SHO - DEEN CONSTRUCTION with respect to the Underlying Lawsuit;

4.  Granting COUNTRY MUTUAL all other further relief this Court deems proper.

Respectfully submitted,

**Country Mutual Insurance Company**

By:     /s/ Michael D. Sanders
        Michael D. Sanders

Michael D. Sanders, Esq., Atty. #6230187
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
(312) 427-3900
(312) 427-3944 (Facsimile)
Email: mds@pw-law.com

**FILED**

**MAY 23, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE GUZMAN**
**MAGISTRATE JUDGE ASHMAN**

|  |  |  |  |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | |
| | ) | | |
| SHO-DEEN INC., and SHO-DEEN | ) | | **07 C 2900** |
| CONSTRUCTION COMPANY, L.L.C., | ) | | |
| | ) | | |
| Defendants. | ) | | **WAH** |

## COMPLAINT

The United States of America, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, on behalf of the United States Army Corps of Engineers ("Corps of Engineers"), complains as follows:

### Introduction

1.      This is a civil action for injunctive relief and for civil penalties pursuant to the Clean Water Act, 33 U.S.C. §§ 1311, 1319(b) and 1344.

2.      In 1972, Congress enacted the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

3.      To this end, the Clean Water Act prohibits discharging dredged and fill material into navigable waters of the United States without a permit from the Corps of Engineers. 33 U.S.C. §§ 1311(a), 1344, 1362(6), (7) and (12).

4.      "Discharge of a pollutant" includes any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

5.      "Pollutant" includes dredged spoil, rock, sand and cellar dirt. 33 U.S.C. § 1362(6).

6.      "Navigable waters" include "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

PLAINTIFF'S
EXHIBIT
**A**

7.      "Point source" includes a "discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

8.      "Person" includes "an individual or corporation." 33 U.S.C. § 1362(5).

9.      Under section 404 of the Clean Water Act, 33 U.S.C. §§ 1344, Congress established a permit system for the discharge of pollutants (dredged and fill material) to be administered by the Corps of Engineers.

10.     Discharge of dredged or fill material into the waters of the United States is prohibited by Section 301, unless authorized by a permit issued pursuant to Section 404 of the Clean Water Act.

11.     Section 309 of the Clean Water Act, 33 U.S.C. § 1319(b) authorizes the United States to bring a civil action for appropriate relief, including a permanent or temporary injunction for violations of the Clean Water Act. Also, Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), authorizes the court to impose a civil penalty of up to $25,000 per day for each violation. For violations occurring after March 15, 2004, the maximum penalty under the Clean Water Act is $32,500 per day for each violation. 40 C.F.R. Part 19.4.

### Jurisdiction and Venue

12.     The court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 33 U.S.C. §§ 1311, 1319(b) and 1344.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that the alleged violations of the Clean Water Act occurred in the Northern District of Illinois and defendants are located in the Northern District of Illinois.

### Parties

14.     The plaintiff is the United States of America. The United States Attorney is authorized to bring this action pursuant to 33 U.S.C. §§ 1319(b), 1344, and 28 U.S.C. § 516.

2

15.     Defendant, Sho-Deen, Inc., is incorporated in the state of Illinois and has its principal place of business located at 17 North First Street, Geneva, Illinois, 60134, which is within the Northern District of Illinois and is subject to the jurisdiction of this court.

16.     Defendant, Sho-Deen Construction Company, L.L.C.,("Sho-Deen Construction") is a limited-liability company in the state of Illinois with its principal place of business located at 17 North First St., Geneva, Illinois, 60134, which is within the Northern District of Illinois and is subject to the jurisdiction of this court.

17.     Defendant Sho-Deen, Inc., is a "person" under the Clean Water Act, 33 U.S.C. § 1362(5).

18.     Defendant Sho-Deen Construction is a "person" under the Clean Water Act, 33 U.S.C. § 1362(5).

19.     At all times relevant to the complaint, the defendants either owned, leased or otherwise controlled the property that is the subject of this complaint, as described in this paragraph, and/or otherwise controlled the activities that occurred on such property. The property is located in the State of Illinois and within the Northern District of Illinois in unincorporated Geneva, Kane County, Illinois at Mill Creek south of Keslinger Road, legally described as W ½ of Section 7, T39N R8E and E ½ of Section 12, T39N R7E, PIN 10-05-226-004. The subject property is located at or near Mill Creek, a tributary of the Fox River, a navigable-in-fact water of the United States, and the property contains wetlands adjacent to Mill Creek and/or tributaries to Mill Creek. The subject property is hereinafter referred to as the "Mill Creek Development Site."

### Background of the Defendants

20.     Defendants are engaged in the business of, *inter alia*, home construction and real estate development.

21.     In 1995, defendants violated the CWA by building a pier in the Fox River without a permit, which the Corps settled administratively.

3

22.    In 1997, defendants violated the CWA in connection with an outfall structure it installed without the required Corps permit which was also settled by the Corps administratively.

## Clean Water Act Violations

23.    On or about September 23, 2004, and dates thereafter, the Corps of Engineers inspected the Mill Creek Development Site and found that the defendants had deposited, or caused to be deposited, dredged and/or fill material into Mill Creek and/or into or on the wetlands adjacent to Mill Creek on the Mill Creek Development Site.

24.    The dredged and/or fill material referred to in paragraph 23 above was discharged into Mill Creek and/or the wetlands adjacent to Mill Creek and/or its tributaries in connection with construction activities at and/or near the "Dobson Lane Bridge" which is located within the Mill Creek Development Site.

25.    Mill Creek is a perennial tributary to the Fox River, a navigable waters of the United States under the Clean Water Act, as defined in 33 U.S.C. § 1362(7) and 33 C.F.R. Part 328.

26.    Mill Creek and/or the wetlands adjacent to Mill Creek are waters of the United States under the Clean Water Act, as defined in 33 U.S.C. § 1362(7) and 33 C.F.R. Part 328.

27.    The dredged and/or fill material referenced in paragraphs 23 through 26 above are "pollutants" under the Clean Water Act. 33 U.S.C. § 1362(6).

28.    The dredged and/or fill material referenced in paragraphs 23 through 27 above was discharged into waters of the United States from a "point source" as defined in the Clean Water Act, 33 U.S.C. § 1362(14).

29.    The work described in paragraph 23 through 28 above constituted the "discharge of a pollutant" under the Clean Water Act, 33 U.S.C. § 1362(12).

30.    The defendants did not obtain the required permit from the Corps of Engineers, and were not otherwise authorized by the Corps of Engineers, under the Clean Water Act, 33 U.S.C. § 1344, to discharge pollutants as described in paragraphs 23 through 29 above.

31.    The unauthorized work of defendants described in paragraphs 23 through 30 above constituted violations of 33 U.S.C. §§ 1311, 1319(b) and 1344, and caused injury to navigable waters of the United States.

32.    To date, pollutants that were deposited into waters of the United States as described in paragraphs 23 through 31 above, without a permit from the Corps of Engineers, have not been removed.

33.    Each day the discharged pollutants referred to in paragraphs 23 through 32 above remain in waters of the United States without the required permit issued pursuant to 33 U.S.C. § 1344, constitutes a day of violation of 33 U.S.C. § 1311.

34.    Under the terms of 33 U.S.C. §§ 1319(b), 1319(d) and 1344, and 40 C.F.R. Part 19.4, defendants are liable to the United States for equitable and injunctive relief and are subject to a civil penalty not to exceed $32,500 per day for each violation.

### Prayer For Relief

WHEREFORE, the United States of America seeks a judgment against the defendants Sho-Deen, Inc. and Sho-Deen Construction Company, L.L.C.:

a.    requiring the defendants to restore the wetland and creek at the Mill Creek Development Site to its pre-disturbance condition;

b.    enjoining defendants from discharging any pollutant into navigable waters of the United States without a permit;

c.    requiring defendants to pay a civil penalty not to exceed $32,500 per day for each violation of the Clean Water Act;

d.    awarding the United States its costs in connection with this action; and

e.    awarding the United States such further relief as this court deems just.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/Kurt N. Lindland
    KURT N. LINDLAND
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois  60604
    (312) 353-4163



**COUNTRY.**

Insurance & Financial Services

**Country Mutual Insurance Company**
P.O. Box 2100, Bloomington, IL 61702-2100

NAMED INSURED:

SHODEEN INC
17 N 1ST ST
GENEVA IL 60134

## COMMERCIAL PACKAGE POLICY
## COMMON POLICY DECLARATIONS

| BILLING NUMBER | POLICY NUMBER | INSURANCE OFFICE/AGENT NO. |
|---|---|---|
| 2771929 | A12B 2084990 | 12014 RO-MD/03095 * |

AGENT'S NAME: WILLIAM R SCHUTZ
AGENTS PHONE NO. (847) 632-0300

**TO REPORT A CLAIM ANY TIME DAY OR NIGHT,
CALL 1-800-846-0100.**

POLICY PERIOD: **From** 03/31/2004 **To** 03/31/2005 12:01 A.M. Standard Time At Your Mailing Address Above.

| | |
|---|---|
| INSURED ENTITY:    CORPORATION | DECLARATIONS EFFECTIVE DATE:    03/31/2004 |
| PAYMENT METHOD:    MONTHLY | DECLARATIONS REASON:<br>POLICY RENEWAL |
| INSURED'S BUSINESS:    GENERAL CONTRACTOR | |

In return for payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts. This premium may be subject to adjustment.

| COVERAGE DESCRIPTION | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $143,688.00 |
| COVERAGE FOR CERTIFIED ACTS OF TERRORISM | INCLUDED |
| Total Annual Premium | $ 143,688.00 |

**AVOID PAYING UNNECESSARY PREMIUMS:**

**If you hire contractor(s) or subcontractor(s) you must obtain a Certificate of Insurance indicating that the contractor(s) or subcontractor(s) had insurance coverage during the period the work was performed. The certificate of insurance must be made available at the time of premium audit.**

### THIS IS NOT A PREMIUM NOTICE

COUNTERSIGNED AT BLOOMINGTON, IL      <u>3/3/2004</u>

91606IL(00-04/01/90)      DATE

*Douglas M Bar*

~~PLAINTIFF'S~~ RESENTATIVE
~~EXHIBIT~~
**B**

04321



**Insurance & Financial Services**

Country Mutual Insurance Company
P O Box 2100, Bloomington, IL 61702-2100

# SCHEDULE OF
# LOCATIONS/THIRD PARTY INTERESTS

| BILLING NUMBER | POLICY NUMBER | INSURANCE OFFICE/AGENT NO. |
|---|---|---|
| 2771929 | A12B 2084990 | 12014 RO-MD/03095 * |

| NAMED INSURED |
|---|
| SHODEEN INC |

DECLARATIONS EFFECTIVE:   03/31/2004

| ADDITIONAL NAMED INSURED |
|---|
| NAME/ADDRESS |
| None |

## LOCATION OF COVERED PREMISES

| PREM. NO. | LEGAL DESCRIPTION |
|---|---|
| 1 | 17 N 1ST ST GENEVA IL KANE COUNTY |
| 2 | MILL CREEK NEIGHBORHOOD T & U GENEVA IL KANE COUNTY |
| 3 | MILL CREEK NEIGHBORHOOD II&Q GENEVA IL KANE COUNTY |
| 4 | MILL CREEK NEIGHBORHOOD W GENEVA IL KANE COUNTY |
| 5 | MILL CREEK NEIGHBORHOOD H GENEVA IL KANE COUNTY |
| 6 | MILL CREEK H I J K & L GENEVA IL KANE COUNTY |
| 7 | 39W122 WARNER LN GENEVA IL KANE COUNTY |
| 8 | 39W436 WARNER LN GENEVA IL KANE COUNTY |
| 9 | 100 N RIVER LN GENEVA IL KANE COUNTY |
| 10 | AUTO MALL ST CHARLES IL KANE COUNTY |
| 11 | OS337 GRENGS LN GENEVA IL KANE COUNTY |
| 12 | OS347 GRENGS LN GENEVA IL KANE COUNTY |
| 13 | OS357 GRENGS LN GENEVA IL KANE COUNTY |
| 14 | OS377 GRENGS LN GENEVA IL KANE COUNTY |

| MORTGAGE HOLDER AND LOSS PAYABLE SCHEDULE |
|---|
| NAME/ADDRESS |
| None |

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**COUNTRY.**

**Insurance & Financial Services**

Country Mutual Insurance Company
P O Box 2100, Bloomington, IL 61702-2100

| BILLING NUMBER | POLICY NUMBER | INSURANCE OFFICE/AGENT NO. |
|---|---|---|
| 2771929 | A12B 2084990 | 12014 RO-MD/03095 * |

| NAMED INSURED |
|---|
| SHODEEN INC |

DECLARATIONS EFFECTIVE:    03/31/2004

## LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other than Products/Completed Operations) | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | 2,000,000 |
| PERSONAL AND ADVERTISING INJURY LIMIT | 1,000,000 |
| EACH OCCURRENCE LIMIT | 1,000,000 |
| FIRE DAMAGE LIMIT (Any One Fire) | 100,000 |
| MEDICAL EXPENSE LIMIT (Any One Person) | 5,000 |

| PREM NO. | CLASS CODE | DESCRIPTION | PREMIUM BASIS | | RATE BASIS | RATE | ADVANCE PREMIUM (*COVERAGE) |
|---|---|---|---|---|---|---|---|
| 1 | 20113 | EMPLOYEE BENEFIT PROGRAM LIABILITY - CLAIMS MADE | 1 | Flat Charge | Per Each | 25.000 | $ 250.00 A |
| 1 | 20540 | FIRE LEGAL INCREASED LIMIT | | | | .010 | 50.00 A |
| 1 | 20616 | ADDITIONAL INSURED-MULTIPLE INTEREST | 0 | Each | Per Each | 29.803 | 0.00 A |
| 1 | 47051 | REAL ESTATE DEVELOPMENT PROPERTY INCL PROD/CO | 214 | Acres | Per Each | 17.549 | 3,755.00 A |
| 1 | 91340 | CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING 3 STORIES IN HEIGHT | 100,000 | Payroll | Per 1000 | 29.630 | 2,963.00 A |
| 1 | 91340 | CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING 3 STORIES IN HEIGHT | 100,000 | Payroll | Per 1000 | 13.116 | 1,312.00 P |
| 1 | 91580 | CONTRACTORS EXECUTIVE SUPERVISORS OR EXECUTIVE SUPERINTENDENTS INCL PROD/CO | 140,000 | Payroll | Per 1000 | 83.502 | 11,690.00 A |

*Coverage: P is for Products/Completed Operations   A is for All Other Hazards

| | |
|---|---|
| EXPENSE CONSTANT | 100.00 |
| TOTAL ADVANCE PREMIUM FOR THIS COVERAGE PART | $ 143,688.00 |



**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Insurance & Financial Services

Country Mutual Insurance Company
P O Box 2100, Bloomington, IL 61702-2100

| BILLING NUMBER | POLICY NUMBER | INSURANCE OFFICE/AGENT NO. |
|---|---|---|
| 2771929 | A12B 2084990 | 12014 RO-MD/03095 * |

| NAMED INSURED |
|---|
| SHODEEN INC |

DECLARATIONS EFFECTIVE:    03/31/2004

| PREM. NO | CLASS CODE | DESCRIPTION | PREMIUM BASIS | | RATE BASIS | RATE | ADVANCE PREMIUM (*COVERAGE) |
|---|---|---|---|---|---|---|---|
| 1 | 91583 | CONTRACTORS-SUBCONTRACTED WORK-IN CONNECTION WITH BUILDING CONSTRUCTION, RECON-STRUCTION, REPAIR OR EREC-TION-ONE OR TWO FAMILY DWELLINGS | 18,000,000 | Total Cost | Per 1000 | 1.687 | 30,400.00 A |
| 1 | 91583 | CONTRACTORS-SUBCONTRACTED WORK-IN CONNECTION WITH BUILDING CONSTRUCTION, RECON-STRUCTION, REPAIR OR EREC-TION-ONE OR TWO FAMILY DWELLINGS | 18,000,000 | Total Cost | Per 1000 | 4.768 | 85,824.00 P |
| 1 | 91629 | DEBRIS REMOVAL CONSTRUC-TION SITE | 150,000 | Payroll | Per 1000 | 25.492 | 3,824.00 A |
| 1 | 91629 | DEBRIS REMOVAL CONSTRUC-TION SITE | 150,000 | Payroll | Per 1000 | 5.454 | 818.00 P |
| 2 | 49451 | VACANT LAND (FPR) INCL PROD/CO | 1 | Acres | Per Each | 14.037 | 14.00 A |
| 3 | 49451 | VACANT LAND (FPR) INCL PROD/CO | 1 | Acres | Per Each | 14.037 | 14.00 A |
| 4 | 49451 | VACANT LAND (FPR) INCL PROD/CO | 1 | Acres | Per Each | 14.037 | 14.00 A |
| 5 | 49451 | VACANT LAND (FPR) INCL PROD/CO | 1 | Acres | Per Each | 14.037 | 14.00 A |
| 6 | 49451 | VACANT LAND (FPR) INCL PROD/CO | 1 | Acres | Per Each | 14.037 | 14.00 A |
| 7 | 46362 | MODEL HOMES INCL PROD/CO | 1 | Each | Per Each | 374.277 | 374.00 A |
| 8 | 46362 | MODEL HOMES INCL PROD/CO | 1 | Each | Per Each | 374.277 | 374.00 A |
| 9 | 46362 | MODEL HOMES INCL PROD/CO | 1 | Each | Per Each | 374.277 | 374.00 A |
| 10 | 49451 | VACANT LAND (FPR) INCL PROD/CO | 1 | Acres | Per Each | 14.037 | 14.00 A |
| 11 | 46362 | MODEL HOMES INCL PROD/CO | 1 | Each | Per Each | 374.277 | 374.00 A |

*Coverage:  P is for Products/Completed Operations   A is for All Other Hazards

| | | |
|---|---|---|
| EXPENSE CONSTANT | | 100.00 |
| TOTAL ADVANCE PREMIUM FOR THIS COVERAGE PART | | $ 143,688.00 |



**Insurance & Financial Services**

Country Mutual Insurance Company
P O Box 2100, Bloomington, IL 61702-2100

# COMMERCIAL GENERAL LIABILITY
## COVERAGE PART DECLARATIONS

| BILLING NUMBER | POLICY NUMBER | INSURANCE OFFICE/AGENT NO. |
|---|---|---|
| 2771929 | A12B 2084990 | 12014 RO-MD/03095 * |

| NAMED INSURED |
|---|
| SHODEEN INC |

**DECLARATIONS EFFECTIVE:**    03/31/2004

| PREM. NO | CLASS CODE | DESCRIPTION | PREMIUM BASIS | | RATE BASIS | RATE | ADVANCE PREMIUM (*COVERAGE) |
|---|---|---|---|---|---|---|---|
| 12 | 46362 | MODEL HOMES INCL PROD/CO | 1 | Each | Per Each | 374.277 | 374.00 A |
| 13 | 46362 | MODEL HOMES INCL PROD/CO | 1 | Each | Per Each | 374.277 | 374.00 A |
| 14 | 46362 | MODEL HOMES INCL PROD/CO | 1 | Each | Per Each | 374.277 | 374.00 A |

*Coverage:  P is for Products/Completed Operations   A is for All Other Hazards

| EXPENSE CONSTANT | 100.00 |
|---|---|
| TOTAL ADVANCE PREMIUM FOR THIS COVERAGE PART | $ 143,688.00 |

# COUNTRY.

**Insurance & Financial Services**
Country Mutual Insurance Company
P O Box 2100, Bloomington, IL 61702-2100

## FORMS AND ENDORSEMENTS

| BILLING NUMBER | POLICY NUMBER | INSURANCE OFFICE/AGENT NO |
|---|---|---|
| 2771929 | A12B 2084990 | 12014 RO-MD/03095 * |

| NAMED INSURED |
|---|
| SHODEEN INC |

DECLARATIONS EFFECTIVE:    03/31/2004

---

**ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS**

BA3564(03/2000), BA3586(03/2000), IL0985(01/2003), T80(07/1993)

**APPLICABLE PROPERTY FORMS AND ENDORSEMENTS**

**APPLICABLE CRIME FORMS AND ENDORSEMENTS**

**APPLICABLE LIABILITY FORMS AND ENDORSEMENTS**

CG0001(07/1998), IL0021(11/1994), CG2172(12/2002), BG0131(03/2000), BG3725(04/1990), CG2503(03/1997), BA3171(04/1990)

**APPLICABLE INLAND MARINE FORMS AND ENDORSEMENTS**

**APPLICABLE BOILER AND MACHINERY FORMS AND ENDORSEMENTS**

**APPLICABLE EQUIPMENT BREAKDOWN FORMS AND ENDORSEMENTS**

# Commercial Package Policy



## COUNTRY

### Insurance & Financial Services

**COUNTRY Mutual Insurance Company**
**COUNTRY Casualty Insurance Company**

**We're happy to serve you . . .**

COUNTRY Insurance & Financial Services is a group of companies offering you convenient insurance and comprehensive financial solutions to fit your needs. The declarations page of your Commercial Package Policy shows all your coverages, limits and the company issuing your policy. We believe this policy provides the best solution to your business insurance needs available in the market today.

Everything about this policy has been designed with you, the client, in mind - from its organization to its easy-to-understand language. Please note the Definitions section for words you'll find in boldface type throughout your policy.

We urge you to read this policy carefully. Your COUNTRY agent will welcome your call if you have any questions.

The insurance provided by this policy is subject to the following conditions.

The premium shown on each declarations page contained in the policy was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

### A. ADDITIONAL PREMIUM AUDIT CONDITIONS

1. You must pay premiums developed by a premium audit when due, subject to the terms of the audit conditions in each applicable coverage form. If you do not pay audit premiums when due, we have the right to cancel your policy that is in effect on or after the due date of the audit premium. Our right to cancel applies to the policy renewal or continuation which provides the same or similar coverage to which the unpaid audit premium applies. We have this right even if you have paid other premiums due on past or current policies.

2. We may adjust this policy's advance or deposit premium during the current policy term based on our premium audit for the most recent previous policy term, according to the terms of the audit conditions in each applicable coverage form. If the adjustment results in additional premium, that premium is due and payable on notice to the first Named Insured. If the adjustment results in premium reduction, we will return the excess premium to the first Named Insured.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. CONTINUOUS RENEWAL

Subject to our consent and subject to our premiums, rules and forms then in effect, this policy may be continued in force for each successive policy term. When we consent to renew this policy, the renewal premium must be paid in advance. If the renewal premium is not paid, coverage will cease on the coverage termination date. Payment received after the renewal date will be considered a nonbinding application to replace the lapsed policy.

### D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### E. INSPECTION AND SURVEYS

We have the right to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

However, this paragraph does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

This condition (E) applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### F. NO ACTION AGAINST COUNTRY INSURANCE & FINANCIAL SERVICES

Nothing in this policy gives any person, organization, corporation or other entity any rights or causes of action against any parent corporation, affiliate or subsidiary of the company issuing this policy. No rights are created or implied against any member of COUNTRY Insurance & Financial Services other than the company described on the declarations page.

### G. PREMIUMS

The first Named Insured shown in the declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

### H. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

The following General Policy Conditions apply only to COUNTRY Mutual Insurance Company.

### A. Mutuality of Policy.

By accepting this policy, you become a member of COUNTRY Mutual Insurance Company with all the rights and privileges of a member as provided in the COUNTRY Mutual By-Laws in force at the time this policy takes effect, or that may become in force during the continuance of this policy. Upon lapse or other termination of this policy, you will cease to be a member of COUNTRY Mutual and your rights and interests in COUNTRY Mutual will terminate. The insured agrees to cooperate with us in preventing losses insofar as possible to the end that the cost of insurance may be reduced to the lowest point consistent with solvency and sound insurance protection.

**B. Policy Non-assessable.** This policy will be without contingent liability and is non-assessable.

**C. Participation in Savings and Earnings.** This policy is on the mutual or participating plan, and you, during the continuance of this policy, will be entitled to participate in COUNTRY Mutual's savings and earnings as the Board of Directors may determine.

**D. Annual Meetings.** The annual meeting of the members will be held at our principal or home office unless a different place is fixed by the Board of Directors, at an hour and on a day in each year to be set by the Board of Directors. The notice of any meeting of members will fix the hour, day and place of that meeting.

This policy is signed by the President and Secretary and countersigned on the declarations page by an authorized representative.

Philip Nelson
President
COUNTRY Mutual Insurance Company
COUNTRY Casualty Insurance Company

Paul M. Harmon
Secretary
COUNTRY Mutual Insurance Company
A Mutual Company
COUNTRY Casualty Insurance Company
A Stock Company

**Should you have a complaint in regards to this policy, you may contact:**
Manager, Policyholder Relations
P.O. Box 2100
Bloomington, Illinois 61702-2100
Telephone 800-927-3678
**or the -**
Public Service Division
State of Illinois
Department of Insurance
Springfield, Illinois 62767

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(2)** The "bodily injury" or "property damage" occurs during the policy period.

    **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

    **a. Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **b. Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)** That the insured would have in the absence of the contract or agreement; or

        **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

            **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

　**(a)** Employment by the insured; or

　**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

　**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

　　**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

　　**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

　　**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

　**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

　**(c)** Which are or were at any time transported, handled, stored, treated, disposes of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Copyright, Insurance Services Office, Inc., 1997

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)**  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)**  The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.  Damage To Property**

"Property damage" to:

**(1)**  Property you own, rent, or occupy;

**(2)**  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**  Property loaned to you;

**(4)**  Personal property in the care, custody or control of the insured;

**(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**  "Your product";

**(2)**  "Your work"; or

**(3)**  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of Insurance applies to this coverage as described in Section III - Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

## 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a.** "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong decision of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.1.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

## 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that;

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expense for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage **A**.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   **(1)** Agrees in writing to:

     **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

     **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

     **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

**(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either our "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

  **(1)** "Bodily injury" or "personal and advertising injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

    **(d)** Arising out of his or her providing or failing to provide professional health care services.

  **(2)** "Property damage" to property:

    **(a)** Owned, occupied or used by,

    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** with respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

Copyright, Insurance Services Office, Inc., 1997

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest ,will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

   Copyright, Insurance Services Office, Inc., 1997

## 1. Bankruptcy

bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

## 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Copyright, Insurance Services Office, Inc., 1997

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained b a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

    **(1)** The injury or damage arises out of:

        **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

        **(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

    **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

Copyright, Insurance Services Office, Inc., 1997

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

   **b.** Does not include "bodily injury" or "property damage" arising out of:

     **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

     **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

     **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Your product" means:

   **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     **(1)** You;

     **(2)** Others trading under your name; or

     **(3)** A person or organization whose business or assets you have acquired; and

   **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

   **a.** Work or operations performed by you or on your behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **b.** The providing of or failure to provide warnings or instructions.

 Copyright, Insurance Services Office, Inc., 1997

IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
    TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of it limits of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration or uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 11 94

COMMERCIAL GENERAL LIABILITY
CG 21 72 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes, but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   **a.** The act resulted in aggregate losses in excess of $5 million; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

POLICY NUMBER:    A12B 2084990

BG 0131
(03-00)

EFFECTIVE DATE:    03/31/2004

## ADDITIONAL INSURED - MULTIPLE INTERESTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization:

As per Certificate of Insurance or other documents received in the Home Office.  Subject to Audit.

WHO IS AN INSURED (Section II) is amended to include as an insured any person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of your operations or premises owned, leased, or rented by you, subject to the following.

If the person(s) or organization(s) shown in the Schedule:

1.  **Is a mortgagee, assignee, or receiver;**

    a.  This insurance is limited to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance or use of premises you lease or occupy.

    b.  This insurance does not apply to structural alterations, new construction or demolition operations performed by or for that person or organization.

2.  **Is a manager of premises you lease or is an owner or another interest from whom you have leased land,** this insurance is limited to their liability arising out of the ownership, maintenance or use of that part of the premises or land leased to you, and subject to the following additional exclusions.

    This insurance does not apply to:

    a.  Any "occurrence" which takes place after you cease to be a tenant in that premises or lease the land.

    b.  Structural alterations, new construction or demolition operations performed by or for that person or organization.

3.  **Has financial control of you; or who owns, maintains or controls premises you lease or occupy;**

    a.  This insurance is limited to their liability arising out of their financial control of you; or premises they own, maintain or control while you lease or occupy these premises.

    b.  This insurance does not apply to structural alterations, new construction or demolition operations performed by or for that person or organization.

4.  **Is a grantor of a franchise to you,** this insurance is limited to their liability as a grantor of a franchise to you.

5.  **Is a concessionaire trading under your name,** this insurance is limited to their liability as a concessionaire, trading under your name.

6.  **Is a co-owner of premises you own,** this insurance is limited to their liability as co-owner of the premises you own.

7.  **Leases equipment to you,** this insurance is limited to their liability arising out of the maintenance, operation, or use by you of the equipment leased to you by such person or organization, and is subject to the following additional exclusions:

POLICY NUMBER:  A12B 2084990

BG 3725
(04-90)

EFFECTIVE DATE:  03/31/2004

## EMPLOYEE BENEFIT PROGRAMS COVERAGE ENDORSEMENT

### (CLAIMS MADE BASIS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

Coverage Period: 03/31/2002 to 03/31/2004

Retroactive Date: 08/25/2003

### LIMITS OF LIABILITY

| | | |
|---|---|---|
| $ | 500,000 | Each Claim |
| $ | 1,000,000 | Aggregate |
| $ | 1,000 | Retained Limit |

**SECTION I - COVERAGES** is amended to include the following:

**COVERAGE D. EMPLOYEE BENEFIT PROGRAMS COVERAGE**

1.  **Insuring Agreement**

    We will pay those sums that the insured becomes legally obligated to pay as damages to an employee, former employee, or the heirs, beneficiaries or legal representative of either, arising out of a negligent act, error or omission of the insured in the "administration" of "employee benefit programs" which occurs after the Retroactive Date shown above and prior to the termination of this coverage. Coverage afforded by this endorsement applies only to claims for "damages" first made against the insured, and reported to us, during the Coverage Period or during the "extended reporting period."

    With respect to such coverages as is afforded by this endorsement, we will defend any "suit" seeking such "damages" even if such "suit" is groundless, false, or fraudulent. We may investigate, negotiate and settle any claim or "suit" as we deem expedient, but we will not be obligated to pay any claim or judgment or to defend any "suit" after the applicable limit of liability is exhausted by payment of judgments or settlements.

    **SUPPLEMENTARY PAYMENTS - COVERAGE A AND B** applies to **COVERAGE D.**

2.  **Exclusions**

    This insurance does not apply to:

    a.  Any fraudulent, criminal, or malicious errors or omissions.

    b.  Any claims based upon:

        (1)  The failure of performance of any contract by an insurer;

        (2)  The failure of any investment plan to perform as represented by an insured;

        (3)  The inability of "employee benefit programs" to meet their obligation due to insolvency.

    c.  "Damages," direct or consequential, arising out of bodily injury or personal injury or for damage or destruction of any tangible property including loss of use of that tangible property.

    d.  The insured's failure to comply with any law concerning workers' compensation, unemployment compensation, social security, disability benefits law or the Employee Retirement Income Security Act of 1974 or any similar legislation that may be enacted.

    e.  Alleged, unfair or unlawful discrimination or humiliation.

    f.  Advice given by an insured to an employee to participate or not participate in investment subscription plans.

POLICY NUMBER:    A12B 2084990

COMMERCIAL GENERAL LIABILITY
CG 25 03 03 97

EFFECTIVE DATE:    03/31/2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Designated Construction Projects: |
|---|
| All projects. A project is defined as a subdivision or similar development. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

Copyright, Insurance Services Office, Inc., 1996

POLICY NUMBER: A12B 2084990

**BA 3171**
(04-90)

EFFECTIVE DATE: 03/31/2004

This endorsement is attached to and hereby made a part of this policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability:

2. Exclusions
This insurance does not apply to:
Fungi or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or sturcture, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal and Advertising Injury Liability:

2. Exclusions
This insurance does not apply to:
Fungi or Bacteria

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to injury.
b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions Section: "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents, or byproducts produced or released by fungi.

All other terms and conditions remain unchanged.

_Douglas M Bova_
Authorized Representative

24586IL (00-04/01/90)

BA3564
(03-00)

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CLAIMS-MADE)
COMMERCIAL PROPERTY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE FORM
BOILER AND MACHINERY COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM

**A.** The following supersedes any provision to the contrary:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **a.** We may cancel this policy by mailing written notice stating the reason for cancellation.

   **b.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

   **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days, except as provided in paragraphs **7.** and **8.** below.

   **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days, except as provided in paragraphs **7.** and **8.** below.

3. If this policy has been in effect for more than 60 days except as provided in paragraphs **7.** and **8.** below, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this state.

4. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

5. If this policy is canceled, we will send the first named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not offered a refund.

6. Our notice of cancellation will state the reason for cancellation.

7. **REAL PROPERTY OTHER THAN RESIDENTIAL PROPERTIES OCCUPIED BY FOUR FAMILIES OR LESS:**

   The following applies only if this policy provides Commercial Property Coverage to real property other than residential property occupied by four families or less:

   If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation at least 10 days before the effective date of cancellation.

   **a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

   **b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

   **(1)** Season unoccupancy; or

   **(2)** Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

    **c.** The building has:

        **(1)** An outstanding order to vacate;

        **(2)** An outstanding demolition order; or

        **(3)** Been declared unsafe in accordance with the law.

    **d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

**8. RESIDENTIAL PROPERTIES OCCUPIED BY FOUR FAMILIES OR LESS:**

The following applies if this policy provides Commercial Property Coverage to residential properties occupied by four families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

The provisions of paragraphs **7.** and **8.** above do not apply to coverage under the Glass Coverage Form.

**9. FOR INSURANCE PROVIDED UNDER THE COMMERCIAL PROPERTY COVERAGE FORM, THE FOLLOWING APPLIES:**

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

**a.** The other; and

**b.** The Director of the Illinois Department of Agriculture (at the Department's Springfield Office);

60 days' written notice of cancellation.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date.

**2.** Even if we do not comply with the terms of paragraph **1.**, this policy will terminate:

    **a.** On the expiration date if:

        **(1)** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

        **(2)** You have notified us or our agent that you do not want to renew this policy.

    **b.** On the effective date of any other insurance replacing this policy.

**3.** The following provision applies only if this policy provides Commercial Property Coverage to residential properties occupied by four families or less:

If this policy has been issued to you and in effect with us for five or more years, we may not fail to renew this policy unless:

    **a.** The policy was obtained by misrepresentation or fraud;

    **b.** The risk originally accepted has measurably increased; or

    **c.** You received 60 days' notice of our intent not to renew as provided in **1.** above.

The provisions of paragraph **B.3.** above do not apply to coverage under the Glass Coverage Form.

**C. Mailing of Notices**

We will mail cancellation and nonrenewal notices to you, any mortgagee or lienholder known to us and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**D.** The following is added to the **LEGAL ACTION AGAINST US** Condition:

    **a.** With respect to the COMMERCIAL PROPERTY COVERAGE FORM:

        The two year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

The provision does not apply to coverage under the Commercial General Liability Coverage Form.

**b.** With respect to the COMMERCIAL CRIME COVERAGE FORMS - EXCEPT COVERAGE FORM A.:

When forming a part of this policy, Crime General Provisions Form General Condition **B.6. Legal Action Against Us** and Safe Depository Direct Loss Coverage Form Additional Condition **D.2.c. Legal Action Against Us** are replaced by the following:

**Legal Action Against Us:** You may not bring any legal action against us involving loss:

**i.** Unless you have complied with all the terms of this insurance; and

**ii.** Until 90 days after you have filed proof of loss with us; and

**iii.** Unless brought within two years from the date you discover the loss. But we will extend this two year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

**E.** The following APPRAISAL Loss Condition is added to the BOILER & MACHINERY COVERAGE FORM.

Appraisal

If we and you disagree on the value of the property or the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**F.** If this policy provides Commercial Property Coverage to residential properties occupied by four families or less, the second paragraph of the APPRAISAL Condition is deleted and replaced by the following:

**a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

**b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

(1) You demanded the appraisal; and

(2) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

**G.** If this policy provides Commercial Property Coverage to real property used principally for residential purposes up to and including a four family dwelling, or to household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes, the following conditions apply:

**1.** The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

**a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

**b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

(1) You demanded the appraisal; and

(2) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

**2.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

**a.** This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

**(1)** Was made with actual intent to deceive; or

**(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

   **b.** This Coverage Part or Coverage Form is void if you or any other insured ("insured"), at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

      **(1)** This Coverage Part or Coverage Form;

      **(2)** The Covered Property;

      **(3)** Your interest in the Covered Property; or

      **(4)** A claim under this Coverage Part or Coverage Form.

   **c.** Notwithstanding the limitation stated in **3.a.** above, we may cancel the Coverage Part or Coverage Form in accordance with the terms of the Cancellation Condition.

**H.** The following exclusion is added under the applicable Commercial Property Cause of Loss form:

   **1.** We will not pay for loss or damage arising out of any act committed:

      **a.** By or at the direction of any insured; and

      **b.** With the intent to cause a loss.

   **2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

      **a.** The loss arose out of a pattern of criminal domestic violence; and

      **b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

   **3.** If we pay a claim pursuant to paragraph **2** above, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**I.** Condition 2. **DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT** (SECTION IV) in the COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION) is replaced by the following:

   **2.** Duties in The Event of Occurrence, Offense, Claim or Suit.

      **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

         **(1)** How, when and where the "occurrence" or offense took place;

         **(2)** The names and addresses of any injured persons and witnesses; and,

         **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

      **b.** If a claim is made or "suit" is brought against any insured, you must:

         **(1)** Immediately record the specifics of the claim or "suit" and the date received; and,

         **(2)** Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

      **c.** You and any other involved insured must:

         **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

         **(2)** Authorize us to obtain records and other information;

         **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and,

         **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

      **d.** No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**J.** Condition 10, YOUR RIGHT TO CLAIM AND "OCCURRENCE" INFORMATION (SECTION IV), in the COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE VERSION), is replaced by:

**10. Your Right To Claim and Occurrence Information**

    **a.** Subject to paragraph **e.** below, we will provide the first Named Insured shown in the Declarations, within thirty (30) days of the insured's written request or at the same time as any notice of cancellation or nonrenewal, the following claim and "occurrence" information relating to claims-made Coverage Parts we have issued to you within the last three years:

        **(1)** Information concerning closed claims limited to the date and description of "occurrence" and total amount of payments, if any;

        **(2)** Information concerning open claims limited to the date and description of "occurrence", total amount of payments and total reserves, if any; and

        **(3)** Information concerning "occurrence" not included in subparagraphs **(1)** and **(2)** above limited to the date and description of "occurrence" and total reserves, if any.

    **b.** Subject to paragraph **e.** below, we will provide the first Named Insured shown in the Declarations, within twenty (20) days after receipt of written request by the Named Insured, detailed claim and "occurrence" information in addition to that provided under paragraph **a.** above and including specific reserve amounts.

    **c.** Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

    **d.** We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

    **e.** We will not provide the information included in paragraphs **a.** and **b.** above, if this policy has been cancelled for nonpayment of premium, material misrepresentations or fraud on the part of the insured.

**K.** The following exclusion is added under COVERAGES A and B (Section I) in the COMMERCIAL GENERAL LIABILITY COVERAGE FORM.

This insurance does not apply to sums awarded for punitive or exemplary damages. These include damages which may be imposed to punish a wrongdoer or deter others from similar conduct. Except that if a "suit" shall have been brought against any insured with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then we will afford a defense to such action without liability, however, for such punitive or exemplary damages.

**L.** The following is added and applies to all liability coverages under this policy:

If this policy and any other policy issued to you by us or any company affiliated with us apply to the same occurrence, the aggregate maximum limit of liability under all policies will not exceed the highest applicable limit of liability under any one policy. This condition does not apply to any policy issued by us or any affiliated company specifically for the purpose of applying as excess insurance over this policy.

Nothing contained here varies, alters, or extends any provision of the policy except as provided in this endorsement.

BA3586
(03-00)

## POLLUTION AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORMS

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A. Liability Pollution Exclusion Revision(s)**

The following revisions apply to the Commercial General Liability Coverage forms:

**1.** Under **SECTION 1 - COVERAGE, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** item 2. **Exclusions,** item f. **Pollution:** paragraphs 1(d) and 1(e) are replaced by:

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing, or have completed, operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this paragraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing, or have completed, operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**2.** Under **SECTION V - DEFINITIONS,** item 15. "Pollutants" is replaced by:

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. For the purposes of this exclusion, lead of any kind, in whatever form and however used, is considered a pollutant. This description of lead as a pollutant is by way of clarifying example only and is not to be construed in any way limiting the scope of breadth of this exclusion.

**B. Property Pollution Exclusion Revision(s)**

The following is added under B. EXCLUSIONS AND LIMITATIONS in the Building and Personal Property Coverage Form:

This policy does not cover expenses incurred or loss of use resulting from governmental direction or request to remove or otherwise modify materials present at the insured premises which contain substances deemed hazardous to society. Further, coverage does not apply to fines or penalties assessed due to the existence of, or failure to remove such substances.

This policy does not cover damage, loss of use, or expense caused directly or indirectly by radon gas, radium or any other radioactive substances.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER:    A12B 2084990

EFFECTIVE DATE:    03/31/2004

IL 09 85 01 03

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

**SCHEDULE \***

**Terrorism Premium (Certified Acts) $ <u>Included</u>**

**Additional information, if any, concerning the terrorism premium:**

If premium for Certified Acts of Terrorism is shown on your declarations as "included", then:

a. the portion of your annual premium attributable to coverage for "certified acts of terrorism" is included in your policy premium, based on its ordinary coverage; and

b. there currently is no separate rating or premium for "certified acts of terrorism".

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.  Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the Policy Declarations.

**B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

POLICY NUMBER:    A12B 2084990

T 80
(07-93)

EFFECTIVE DATE:    03/31/2004

## AMENDMENT OF NAMED INSURED

This policy is changed as follows:

The name of the insured as shown in the declarations is amended to read as follows:

Shodeen Inc
Trust 914 State Bank of Geneva
Trust 900 State Bank of Geneva
Fox Land Company
Trust 858 State Bank of Geneva
Trust 901 State Bank of Geneva
Trust LT-1984 Harris Trust and Savings Bank
Trust 875 State Bank of Geneva
Trust LT-2411 Harris Trust and Savings Bank
Trust 846 State Bank of Geneva
St Charles Auto Mall LLC
Millcreek Land Company

14534IL (00-07/01/93)